## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jacqueline M. J.,                                      No. 23-cv-1154 (DLM)

        Plaintiff,

v.

                                  **ORDER**

Martin J. O'Malley,
Commissioner of Social Security
Administration,

        Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jacqueline M. J. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 11–12 (Plaintiff's motion and memorandum), 14 (Commissioner's motion and memorandum).) Both parties have voluntarily consented to the undersigned magistrate judge's review of this matter. For the reasons below, the Court denies Plaintiff's motion and grants Defendant's motion.

**BACKGROUND**

On December 4, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging that she had been disabled since April 1, 2020, which she later amended to October 1, 2020. (Tr.[1] at 232–38, 259.) The Social Security Administration ("SSA") denied her claim initially (Tr. at 124–26), and upon reconsideration (Tr. at 131–32). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing by telephone on the matter on May 11, 2022. (Tr. at 140–41 (request for hearing), 36–69 (hearing transcript).) Counsel represented Plaintiff at the hearing, and Plaintiff also testified on her own behalf. (Tr. at 48–51, 57–74.) A vocational expert also testified, opining that if Plaintiff were limited to light, unskilled positions with some postural and environmental limitations, she could still perform work available in the national economy even though she could no longer perform her past relevant work. (Tr. at 75–79.) Plaintiff's counsel had no questions for the vocational expert during the hearing. (Tr. at 79.)

On May 27, 2022, the Commissioner sent his notice of an unfavorable decision to Plaintiff. (Tr. at 10–12 (notice), 13–41 (decision).) The ALJ recognized that Plaintiff suffered from several severe impairments, including "degenerative disc disease; migraine headaches; obesity; obstructive sleep apnea; generalized anxiety disorder; and depressive disorder." (Tr. at 16.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on June 23, 2023. (Docs. 6–6-2.) For ease of reference, the citations to the transcript will identify the page number listed on the lower right corner of the document as though all three parts were combined into one document, rather than the docket page number.

Ryan

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 18.) First, the ALJ considered whether Plaintiff had impairments that, either singly or in combination, met the criteria of a listed impairment[2] that automatically demonstrates an individual qualifies as disabled. (Tr. at 16–22.) As to Plaintiff's physical impairments, the ALJ determined that she did not meet the criteria for Listings for disorders of the skeletal spine, lumbar spinal stenosis impacting the spinal nerves, or headaches. (Tr. at 17–20.) As to her mental impairments, the ALJ determined that Plaintiff did not meet the criteria for Listings for depressive, bipolar, and related disorders, or for anxiety and obsessive-compulsive disorders. (Tr. at 20.)

The ALJ also considered areas of mental functioning that may result in a finding of disability when an individual has either one extreme or two marked limitations, using a five-point scale that includes none, mild, moderate, marked, and extreme.[3] He concluded that the record showed Plaintiff had a mild limitation in her ability to understand, remember, or apply information, and at-most moderate limitations in her ability to interact

---

[2] Listed impairments, or "Listings," are impairments for each major body system severe enough that a person would be prevented from engaging in any gainful activity. *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] In evaluating the limitations a claimant's mental impairments impose, an ALJ is directed to consider four broad functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). As noted above, the ALJ must rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(3); *see also* SSA POMS DI 24583.005(D), https://perma.cc/J22E-T8XN (last visited Sept. 13, 2024) (describing the distinctions between each point on the severity scale in the Social Security Administration Program Operations Manual System ("POMS")); SSA POMS DI 34001.032(F)(2), https://perma.cc/V86P-LTDF (last visited Sept. 13, 2024) (same).

with others, to concentrate, persist, or maintain pace, and to adapt or manage oneself. (Tr. at 20–21.) Finding no criteria for an automatic finding of disability, the ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b), provided the job included additional postural and environmental limitations to account for Plaintiff's impairments. (Tr. at 22.)

Next, the ALJ credited the testimony of the vocational expert that, considering Plaintiff's age, education, work experience, and RFC, she could still perform work in representative jobs in the national economy, including as a marker (Dictionary of Occupational Titles ("DOT") No. 209.587-034) and a mail sorter (DOT No. 209.687-026).[4] (Tr. at 40–41, 78.) Because Plaintiff could still perform work, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 404.1520(g). (*Id.*) Plaintiff appealed the ALJ's decision, but the SSA's Appeals Council denied her request for further review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–3.)

Plaintiff then filed this federal action seeking judicial review of the Commissioner's decision. (Doc. 1.) Plaintiff raises six challenges to the ALJ's determination that she is not disabled: 1) the ALJ improperly evaluated medical opinion evidence by failing to explain the provider relationships to Plaintiff and by substituting the ALJ's own unqualified opinion for theirs; 2) the ALJ's conclusion that Plaintiff did not meet Section 12.04 of the Listing of Impairments is not supported by substantial evidence because the ALJ based it

---

[4] The vocational expert also identified a third representative job as a label coder (DOT No. 920.587-014), although the ALJ does not reference this occupation in his ultimate decision. (Tr. at 40–41, 78.)

4

on improperly evaluated medical opinion evidence; 3) substantial evidence does not support Plaintiff's RFC because the ALJ based it on improperly evaluated medical opinion evidence; 4) the hypothetical questions posed by the ALJ to the vocational expert were inaccurate because Plaintiff's RFC is not supported by substantial evidence; 5) the ALJ failed to resolve the conflict between the testimony of the vocational expert and the DOT according to Social Security Ruling ("SSR") 00-4p; and 6) the ALJ failed to meet his burden to show that there were a significant number of jobs in Plaintiff's geographical region, or in several regions of the national economy, that Plaintiff could perform. Based on these errors, Plaintiff asks the Court to reverse the Commissioner's decision and remand the matter for both a reevaluation of Plaintiff's RFC and for additional vocational expert testimony.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the

ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4)[5] for evaluating DIB claims. Rather, Plaintiff asserts that, because the ALJ failed to follow the appropriate analyses at several steps under the applicable regulations and rules, the decision issued contains legal errors and reaches a conclusion that is not substantially supported by the record. The Court will take each of Plaintiff's challenges in turn.

---

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

**I.     THERE IS NO ERROR IN THE ALJ'S DISCUSSION OR CONCLUSIONS ABOUT PLAINTIFF'S TREATING PSYCHOLOGIST'S MEDICAL OPINION EVIDENCE.**

Plaintiff's first two arguments challenge the ALJ's consideration of the opinion of Amy Strait, Psy.D., Plaintiff's treating psychologist. Plaintiff makes two claims about this error: first, that the ALJ's conclusions about Dr. Strait's opinion lack substantial evidence in the record, and second, that the ALJ's discussion amounts to a legal error because it does not discuss all of the required factors set forth by regulation in 20 C.F.R. § 404.1520c.

As to her substantial evidence argument, Plaintiff claims that Dr. Strait found Plaintiff had marked limitations in her ability to interact with others, to maintain concentration, persistence, or pace, and to adapt and manage oneself. Dr. Strait based these findings on her evaluation of Plaintiff as lacking interest in activities, showing decreased energy and signs of psychomotor agitation or retardation, expressing feelings of guilt or worthlessness, and showing difficulty in thinking or concentrating. Plaintiff argues that Dr. Strait's evaluation is supported by other evidence in the record that demonstrated Plaintiff suffered from consistently severe depression impacting her activities of daily living. Had the ALJ properly accounted for Dr. Strait's opinion rather than giving it cursory attention, Plaintiff argues that the ALJ would have concluded that Plaintiff met the criteria of Listing 12.04 related to depressive and bipolar disorders in the Listing of Impairments.

Plaintiff also argues that the ALJ's discussion of Dr. Strait's opinion amounts to legal error because the ALJ failed to discuss factors required by 20 C.F.R. § 404.1520c(3)(i)–(v), and in particular, Dr. Strait's examining and treating relationship with Plaintiff. Plaintiff also argues that the ALJ wrongly found Dr. Strait's opinion

unpersuasive because the ALJ found it inconsistent with Plaintiff's essentially normal mental status examinations and activities of daily living when in fact Dr. Strait's opinion aligned with other record evidence.

The Commissioner disagrees, arguing that substantial evidence in the record supports the ALJ's conclusions that Plaintiff's impairments did not match all of the criteria required for Listing 12.04. He also contends that the ALJ properly evaluated Dr. Strait's medical opinion according to the required regulatory factors.

**A.    Substantial evidence in the record supports the ALJ's conclusions that Plaintiff's mental function limitations do not meet the criteria for Listing 12.04.**

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990)). A plaintiff must satisfy all of a listing's criteria to meet that listing. *Id.* The criteria for Listing 12.04 regarding depressive, bipolar, and related disorders include impairments "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04. Listing 12.04 requires a person to have either one "extreme" or two "marked" limitations in their ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself, as well as evidence for at least two years that a person's mental disorder is "serious and persistent." *Id.* Underlying symptoms and signs that typically cause such serious and persisting limitations "may include, but are not limited to, feelings of hopelessness or guilt,

suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal." *Id.* Here, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing[] 12.04." (Tr. at 20.)

Plaintiff claims that Dr. Strait's medical opinion showed that she met Listing 12.04's criteria. Dr. Strait completed two mental impairment questionnaires, the first on March 19, 2021, and the second about six months later. (Tr. at 836–41, 1180–85.) Dr. Strait based her medical opinion on biweekly treatment appointments with Plaintiff beginning on February 4, 2021, amounting to a period of less than one year even by the time she submitted the second questionnaire. (Tr. at 836, 1180.) Dr. Strait opined that Plaintiff had diagnoses of generalized anxiety, major depressive, dysthymic, and chronic pain disorders for which she received psychotherapy and medications without improvement during Dr. Strait's period of treatment. (*Id.*) She rated Plaintiff's functional limitations as moderate in understanding, remembering, or applying information, and marked in interacting with others, concentration, persistence, or pace, and adapting or managing oneself. (Tr. at 837, 1181.) Her notes describe Plaintiff as so depressed she often could not get out of bed or leave her house, and as suffering from extreme panic. (*Id.*) As a result, Dr. Straight found that Plaintiff could not meet any of the required mental abilities and aptitudes to sustain work because of her symptoms and noted that Plaintiff would be absent from work for two to three days each week due to her severe depression. (Tr. at 839–40, 1183–84.) However,

Dr. Strait did not check the box defining Plaintiff's disorder as "serious and persistent" because she noted that she had not been treating Plaintiff for long enough to draw conclusions about Plaintiff's disorder "over a period of at least 2 years." (Tr. at 837, 1181.)

The ALJ reviewed Dr. Strait's opinion, finding it unpersuasive because it was inconsistent with other record evidence that Plaintiff had essentially normal mental status examinations. (Tr. at 38.) The ALJ also cited Plaintiff's activities of daily living as evidence that Plaintiff's functional abilities exceeded the type of limitations that would meet a work-preclusive mental impairment like the impairments that would meet the criteria of Listing 12.04. (*Id.*) These activities included caring for her one-year-old grandson, tending to animals on the farm, helping manage her adult sons' finances, and assisting a brother suffering from schizophrenia. (*Id.*)

When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. Here, there is substantial evidence in the record supporting the ALJ's finding that Plaintiff did not meet Listing 12.04. First, contrary to Dr. Strait's opinion that Plaintiff had a marked limitation in interacting with others, the ALJ found only a moderate limitation based on evidence that while Plaintiff endorsed preferring to be alone, she also said that she got along well with others, had friends and a boyfriend, and worked on setting boundaries with family members during psychotherapy sessions. (Tr. at 20 (citing Tr. at 311, 798–99, 817, 1353, 1371–72).) Likewise, the ALJ found Plaintiff had an at-most moderate limitation in concentrating, persisting, or maintaining pace because she could attend to a task for 10 to 15 minutes, had no concentration issues during her February 2021 psychological

examination, and performed within the normal range on psychometric testing. (Tr. at 20–21 (citing Tr. at 330, 797–800, 817).) As to Plaintiff's ability to adapt or manage oneself, the ALJ again found moderate limitations because, despite her subjective reports of anxiety and need for control, she could manage her mental impairments with a conservative course of treatment (psychotherapy and medications), could function independently in self-care, spent time out in her community, performed household chores, and cared for her infant grandchild. (Tr. at 21 (citing Tr. at 59–74, 305–13, 325–33, 817, 879–80).) Without one extreme or two marked impairments, Plaintiff fails to meet the criteria for Listing 12.04. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.

Second, the ALJ reviewed the record and found that while the record supported that Plaintiff's mental impairments could produce her symptoms, her statements about the intensity, persistence, and limiting effects of her symptoms were not borne out by the medical and other evidence in the record. (Tr. at 23.) The Court has reviewed the record citations that the ALJ considered above and finds that the record contains substantial evidence that supports the ALJ's conclusions.

The Court therefore finds, after a careful review of the ALJ's decision and the record before him, that substantial evidence in the record supports the ALJ's determination that Plaintiff did not meet all of the criteria for Listing 12.04, including meeting the criteria of one extreme or two marked areas of mental functioning. Because substantial evidence in the record supports this conclusion, the Court finds no basis for reversal on this point.

**B.      The ALJ did not legally err in his discussion finding Dr. Strait's opinion unpersuasive.**

Plaintiff also claims that the ALJ should have given Dr. Strait's medical opinion as Plaintiff's treating psychologist greater weight when considering Plaintiff's mental impairment limitations. According to Plaintiff, the ALJ's discussion of Dr. Strait's opinion is infected by legal error because the ALJ failed to discuss the factors required by 20 C.F.R. § 404.1520c(3)(i)–(v)—specifically, Dr. Strait's examining and treating relationship with Plaintiff. Plaintiff also argues that the ALJ wrongly found Dr. Strait's opinion unpersuasive.

The governing regulations do not require that an ALJ defer or give specific weight to any medical opinion or findings. *See Austin*, 52 F.4th at 728 (citing 20 C.F.R. § 404.1520c(a)). This reflects a change to the regulations that once required an ALJ to give a treating medical professional's opinion deference and controlling weight. *See* 20 C.F.R. § 404.1527. As of March 27, 2017, ALJs are under the updated requirements found at 20 C.F.R. § 404.1520c. *Compare* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017) *with* 20 C.F.R. § 404.1520c (applicable to claims filed after March 27, 2017). According to these updated regulations, an ALJ must now consider the persuasiveness of medical opinions and findings and explain how they reached their conclusions according to certain factors. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). These factors require that an ALJ "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the

claimant, (4) the source's specialization, and (5) any other relevant factors." *Austin*, 52 F.4th at 728 (quoting *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)). The first two factors of supportability and consistency are the most important and are the only two factors that an ALJ must explain in their decision, even though all of the factors must be considered. 20 C.F.R. § 404.1520c(a); *see also Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases concluding that an ALJ's failure to address and explain supportability and consistency warranted remand). In short, an ALJ's allocation of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision.

Turning to its review, the Court first finds that the ALJ did not address the factor of Plaintiff's examining relationship with Dr. Strait. Yet this "examining relationship" factor falls under the factors that the SSA "may, but [is] not required to, explain" in making its determination, unlike the mandatory factors of "supportability" and "consistency" which an ALJ must discuss. 20 C.F.R. § 404.1520c(b)(2). In other words, courts assume that an ALJ considered the "examining relationship" when evaluating the persuasiveness of an opinion or finding.

Considering the two factors that an ALJ must address under § 404.1520c, the Court finds that the ALJ discussed his reasons for finding that Dr. Strait's opinion lacked consistency with, and support from, the record. (Tr. at 38.) The ALJ opined that, although Dr. Strait opined that Plaintiff had three areas of mental function that showed marked limitations, this position was inconsistent with, and unsupported by, record evidence. (Tr.

at 38.) The ALJ then discussed conflicting record evidence of essentially normal mental status examinations and engagement in daily living activities that suggested Plaintiff's limitations were not as severe as she subjectively reported. (*Id.*) Although Plaintiff may disagree with this analysis and its conclusions, the Court finds that this analysis is sufficient under 20 C.F.R. § 404.1520c. The Court also finds it is supported by substantial evidence in the record as a whole, as discussed above. The Court thus finds no basis for reversal as to the ALJ's discussion of Dr. Strait's opinion.

## II.    SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE SUPPORTS THE ALJ'S RFC LIMITATIONS TO ACCOMMODATE PLAINTIFF'S BACK PAIN AND MIGRAINE HEADACHES.

Plaintiff's next argument is that substantial evidence in the record does not support the physical limitations of her RFC, which she claims should reflect the greater limitations found in the opinions of Plaintiff's primary care physician, Jennifer Hart, PA-C, and Dr. Strait. Specifically, Plaintiff argues that her back pain and migraine headaches result in work-preclusive limitations, but that the ALJ ignored persuasive opinion evidence on this point and instead substituted his own medically-unqualified judgment that Plaintiff's limitations were not severe enough to preclude work.

The Commissioner argues that while Plaintiff may disagree with the ALJ's conclusions, the ALJ's decision is supported by substantial evidence in the record and contains no legal error. The Commissioner asserts that Plaintiff bears the burden to prove greater restrictions are required in her RFC, and that she has not met that burden.

A plaintiff's RFC is the measure of the "the most [they] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all relevant evidence in

the record to fashion a plaintiff's RFC, "including medical records, observations of treating physicians and others, and [the plaintiff's] own description of [their] limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *see also* 20 C.F.R. § 404.1545(e) (providing that the ALJ "will consider the limiting effects of all [a plaintiff's] impairment(s), even those that are not severe, in determining [their] residual functional capacity"). "[T]o find a [plaintiff] has the residual functional capacity to perform a certain type of work, the [plaintiff] must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

## A.    Substantial evidence in the record supports the ALJ's RFC concerning Plaintiff's back pain and migraine headaches.

Here, Plaintiff's RFC contains limitations to account for her physical impairments, including, for example, a limitation to light work with no climbing of ladders, occasional climbing of stairs, occasional balancing, occasional bending down, occasional reaching overhead, and frequent reaching side to side. (Tr. at 22.) The ALJ discussed the record evidence, including opinion evidence, on Plaintiff's back pain and migraine headaches. (Tr. at 22–29.) Such evidence included Plaintiff's spinal pain, imaging of her spine showing mild to moderate narrowing of her discs, and treatments including physical therapy, branch blocks, and radiofrequency ablation. (*E.g.*, Tr. at 24 (citing Tr. at 902), 25 (citing Tr. at 785), 26–27 (citing Tr. at 901), 28 (citing Tr. at 1387, 1396–98).) As to her migraine headaches, the ALJ found that Plaintiff's treatment records were generally

preventative after 2020, employing medications, Botox injections, nerve block injections, and physical and chiropractic therapies to reduce the frequency and severity of her migraines. (Tr. at 29.) Here again, the ALJ discussed the record evidence on Plaintiff's migraines when reaching this conclusion. (*E.g.*, Tr. at 23 (citing Tr. at 59–74, 307–12, 325–32), 24 (citing Tr. at 425–27, 483, 503), 25 (citing Tr. at 921–24), 26 (citing Tr. at 863–64), 27 (citing Tr. at 979), 27–28 (citing Tr. at 1437), 28 (citing Tr. at 1417, 1425, 1439), 29 (citing Tr. at 1419).) After reviewing the evidence on her back pain and migraine headaches, the ALJ concluded that her RFC required adjustments to accommodate her limitations:

> The undesigned found the claimant's migraine headaches and back impairments limit the claimant to light exertional work (i.e., lifting, carrying, pulling, and pushing up to 10 pounds frequently and 20 pounds occasionally, and sitting, standing, and walking 6 hours each in an 8-hour workday with normal breaks). The claimant was capable of that level of work activity as long as she occasionally balanced, crawled, crouched, kneeled, stooped, and climbed ramps and stairs but never ladders, ropes, or scaffold nor exposure to hazards. The undersigned further found the claimant was capable of occasionally reaching overhead with the bilateral upper extremities, and frequently, but not constantly, reaching in all other directions with the bilateral upper extremities. Additionally, the claimant was able to tolerate occasional exposure to extreme heat, extreme cold, and humidity; light and noise equivalent to that of an office setting; work environment where the noise intensity level did not exceed "moderate" as that term was defined in the Selected Characteristics of Occupations; and no exposure to vibration, such as vibratory tools or machinery.

(Tr. at 29.)

Plaintiff argues that the ALJ based his decision on his own conclusions rather than on medical evidence. But considering the ALJ's lengthy discussion of record evidence

discussed above on Plaintiff's back and headache impairments—including objective medical evidence—the Court respectfully disagrees with Plaintiff's argument.

**B.   The ALJ did not legally err in his discussion finding the opinions of Ms. Hart and Dr. Strait unpersuasive.**

Plaintiff also contends that if the ALJ had properly considered the medical opinion evidence from Ms. Hart and Dr. Strait according to the requirements of the relevant regulatory standard, the RFC would have reflected Plaintiff's actual, more severe limitations. However, the Court finds that the ALJ followed the requirements of 20 C.F.R. § 404.1520c when he found the opinions of Ms. Hart and Dr. Strait only partially persuasive.

As to Ms. Hart's opinion, she submitted a number of physician's statements about Plaintiff's symptoms that contained updates on the status of Plaintiff's conditions and limitations between September 2020 and June 2021. (*E.g.*, Tr at 1319, 1327, 1332, 1336.) These statements noted that Plaintiff's migraines were so severe she could not return to work until June 2021. (*Id.*) Ms. Hart also submitted letters on Plaintiff's behalf from October 2020 through March 2022 excusing Plaintiff from work based on her medical conditions. (*E.g.*, Tr. at 1052, 1160, 1220–34, 1319, 1389.) Finally, Ms. Hart submitted an RFC questionnaire in December 2020 in which she assessed Plaintiff's limitations as follows: can lift less than 10 pounds rarely, sit 10 minutes at a time and for a total of less than two hours in an eight-hour workday, stand 10 minutes, walk zero blocks, stand and walk for less than two hours in an eight-hour workday, walk around for 10 minutes, change positions at will, be able to lie down, take unscheduled 10- to 15-minute breaks every one

to two hours, never move her head and neck, rarely perform postural movements, and limit

her handling and reaching. (Tr. at 443–48.)

The ALJ reviewed Ms. Hart's submissions and found them unpersuasive. As to her

physician's statements and letters, the ALJ found they provided only temporary, short-term

evidence that lacked persuasive value under 20 C.F.R. § 404.1520b(c).[6] As to Ms. Hart's

RFC assessment, the ALJ pointed out that Ms. Hart's clinic notes show Plaintiff filled out

---

[6] The Court understands the ALJ's conclusion to be that Ms. Hart's opinions reach matters
reserved for the Commissioner under 20 C.F.R. § 404.1520b(c)(3):

> (3) Statements on issues reserved to the Commissioner. The statements listed in
> paragraphs (c)(3)(i) through (c)(3)(viii) of this section would direct our
> determination or decision that you are or are not disabled or blind within the
> meaning of the Act, but we are responsible for making the determination or
> decision about whether you are disabled or blind:
>> (i)     Statements that you are or are not disabled, blind, able to work, or
>>         able to perform regular or continuing work;
>> (ii)    Statements about whether or not you have a severe impairment(s);
>> (iii)   Statements about whether or not your impairment(s) meets the
>>         duration requirement (see § 404.1509);
>> (iv)    Statements about whether or not your impairment(s) meets or
>>         medically equals any listing in the Listing of Impairments in Part
>>         404, Subpart P, Appendix 1;
>> (v)     Statements about what your residual functional capacity is using
>>         our programmatic terms about the functional exertional levels in
>>         Part 404, Subpart P, Appendix 2, Rule 200.00 instead of
>>         descriptions about your functional abilities and limitations (see §
>>         404.1545);
>> (vi)    Statements about whether or not your residual functional capacity
>>         prevents you from doing past relevant work (see § 404.1560);
>> (vii)   Statements that you do or do not meet the requirements of a
>>         medical-vocational rule in Part 404, Subpart P, Appendix 2; and
>> (viii)  Statements about whether or not your disability continues or ends
>>         when we conduct a continuing disability review (see § 404.1594).

20 C.F.R. § 404.1520b(c)(3).

her own questionnaire for her disability application, eroding its persuasive value versus a physician's own opinion. (Tr. at 36 (citing Tr. at 480).) The ALJ found that most of Ms. Hart's conclusions appeared to be supported by Plaintiff's subjective reports but not by objective medical evidence. (Tr. at 36.) Specifically, Ms. Hart observed that Plaintiff reported her symptoms—including her back pain and headaches—would not permit her to work. (Tr. at 480.) In contrast, Ms. Hart's physical findings about Plaintiff included that she was alert, oriented, spoke normally, had appropriate affect, showed organized thoughts, had an anxious mood, appeared well-developed and nourished, showed no distress, had normal musculoskeletal and neurological exams, and had no unusual findings during a neck exam. (*Id.*) The ALJ concluded that on such generally normal evaluative findings except for her mood, the degree of limitations that Ms. Hart then endorsed for Plaintiff lacked support. (Tr. at 36.)

Plaintiff disagrees with the ALJ's assessment, arguing that his discussion did not comply with the regulations because he did not address the required factors, including Ms. Hart's treating relationship with Plaintiff. Yet as discussed above, the governing regulations do not require that an ALJ defer or give specific weight to any medical opinion or findings. *See Austin*, 52 F.4th at 728 (citing 20 C.F.R. § 404.1520c(a)). Rather, an ALJ must consider all five factors found at 20 C.F.R. § 404.1520c(c)(1)–(5), and must explain the first two factors—supportability and consistency—when assessing a medical opinion's persuasive value. 20 C.F.R. § 404.1520c(b)(2); *see also Violet G.*, 2023 WL 2696594, at *6. Here, the ALJ explained why he found Ms. Hart's opinion on Plaintiff's limitations unpersuasive: because she opined on areas reserved for the Commissioner under 20 C.F.R.

§ 404.1520b(c), and because her assessment lacked consistency with, and support from, her own objective medical findings on the severity of Plaintiff's symptoms.

The same holds true for the ALJ's evaluation of Dr. Strait's opinion on Plaintiff's RFC. Dr. Strait treated Plaintiff for her mental impairments, and this included treating her for migraines and chronic pain. (Tr. at 836–37, 1180.) Dr. Strait opined that, as previously noted, Plaintiff's impairments were work-preclusive. (Tr. at 836–841, 1181–85.) The ALJ concluded, also as previously noted, that the record evidence did not support the degree of limitations from her mental impairments that Dr. Strait identified, as borne out by evidence of Plaintiff's daily living activities. (Tr. at 38.) This analysis remains sufficient under 20 C.F.R. § 404.1520c, as discussed above, and the Court again finds no basis for reversal as to the ALJ's discussion of Dr. Strait's opinion.

## III. THE VOCATIONAL EXPERT'S TESTIMONY CONSTITUTES SUBSTANTIAL EVIDENCE IN THE RECORD SUPPORTING THE ALJ'S CONCLUSION THAT PLAINTIFF IS NOT DISABLED.

Plaintiff's next argument is that substantial evidence in the record fails to support the ALJ's conclusion that Plaintiff is not disabled because the vocational expert gave inaccurate testimony that could not provide a reliable basis for any conclusions. Specifically, Plaintiff contends that because the RFC hypotheticals posed to the vocational expert did not include all of Plaintiff's limitations, the vocational expert could not accurately assess whether jobs existed which Plaintiff could perform.

The Commissioner disagrees, arguing that the ALJ's hypothetical questions were grounded in record evidence and resulted in accurate responses that provided a basis for the ALJ's disability determination. The Commissioner further contends that, if the Court

finds Plaintiff's RFC determination is supported by substantial evidence in the record and is not infected by legal error, then Plaintiff's arguments about the hypothetical questions fail because they depend on the Court finding an unsupported, legally insufficient RFC determination.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622, F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). As discussed above, the Court has already concluded that the ALJ appropriately tailored Plaintiff's RFC to accommodate limitations substantially supported by the record.

Building on this conclusion, the Court also finds that the ALJ accurately described the exertional, postural, and environmental limitations in Plaintiff's RFC to the vocational expert during the hearing. (Tr. at 76–78.) In response, the vocational expert testified that, if limited to light and unskilled positions, a person with Plaintiff's postural and environmental limitations could still perform work available in the national economy even though she could no longer perform her past relevant work. (Tr. at 75–79.) Plaintiff's counsel did not question the vocational expert. (Tr. at 79.) The ALJ then relied on the expert's testimony. (Tr. at 41.)

The Court concludes that the vocational expert gave accurate testimony that the ALJ reasonably relied on to find that Plaintiff is not disabled. Because the Court finds no error in the ALJ's assessment of Plaintiff's RFC, and because the hypothetical questions posed

to the vocational expert accurately reflected the limitations of that RFC, the Court finds no basis for remand here.

## IV.   THE ALJ'S DECISION COMPLIED WITH SSR 00-4P.

Plaintiff's next argument is that the ALJ failed to meet his duty to resolve conflicts between the testimony of the vocational expert and the DOT. Plaintiff claims that although the ALJ asked the vocational expert to consider a hypothetical person who could perform only simple, routine tasks and simple work-related decisions, the vocational expert identified two representative jobs that do not match such limitations. Rather than resolving this conflict, Plaintiff argues that the ALJ failed to elicit a reasonable explanation for the conflict by the vocational expert as required of him by SSR 00-4p. Plaintiff contends that this constitutes reversible error.

The Commissioner argues that the ALJ properly relied on the vocational expert's testimony that no conflict existed between her testimony and the DOT. He contends that the identified representative occupations required a reasoning level of two or three, and that the DOT definitions for such jobs do not require more than performing work on simple, routine tasks and simple work-related decisions.

When receiving a vocational expert's testimony, an ALJ must ask whether their testimony conflicts with the DOT and, if so, must follow the procedure provided by SSR 00-4p. *See* SSR 00-4p, 2000 WL 1898704, at *2–4 (Dec. 4, 2000); *see also Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014). Under SSR 00-4p, "[w]hen there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the

[expert] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2. When there is a conflict, neither the DOT nor the expert testimony automatically takes priority; instead, the ALJ "must resolve the conflict by determining if the explanation given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." *Id.* "The adjudicator must explain the resolution of the conflict." *Id.* at *4.

During the May 2022 hearing for Plaintiff here, the ALJ posed a hypothetical question about what jobs would be available to a person limited to, among other things, "simple and routine tasks performed in a work environment free of fast-paced production requirements, i.e., no work on an assembly line," and "low stress work . . . involving only simple work-related decisions and routine workplace changes." (Tr. at 77.) The vocational expert testified that, based on the ALJ's hypothetical limitations, such a person could still perform work in representative jobs in the national economy. (Tr. at 76–79.) The expert identified three jobs, including a marker (DOT No. 209.587-034), a mail sorter (DOT No. 209.687-026), and a label coder (DOT No. 920.587-014). (Tr. at 78.) The expert did not offer testimony about the regional location(s) of such jobs. After receiving her testimony, the ALJ pointed out that the DOT does not cover some aspects of functional limitations, including "time off task, absenteeism, pace work, work in proximity to others, low-stress work, work in proximity to hazards, distinction between reaching overhead, reaching in all other directions, distinction between climbing ladders versus stairs, and use of vibratory tools." (Tr. at 78–79.) The ALJ thus asked upon what source the vocational expert based her testimony on these limitations, and she answered "[t]hirty-seven years professional

experience in job placement." (Tr. at 79.) The ALJ then asked, "[a]nd has your testimony been consistent with the DOT and SCO?"[7] to which the vocational expert responded, "Yes." (*Id.*)

The ALJ ultimately adopted an RFC that limited Plaintiff to "simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line)" and "low stress work, which is defined as involving only simple, work-related decisions and routine work place changes." (Tr. at 22.) The ALJ cited two of the vocational expert's examples of representative jobs that Plaintiff could still perform with such limitations, including the occupations of marker (DOT No. 209.587-034) and mail sorter (DOT No. 209.687-026). (Tr. at 40.) He also concluded that the vocational expert's testimony was consistent with the DOT. (Tr. at 41.) In doing so, he noted that the DOT does not provide information on "pace work" or "low stress work," among other things, and that he relied on the vocational expert's testimony based on her 37 years of professional experience in job placement to reach conclusions on these areas where the DOT is silent. (*Id.*)

A.     **There is no conflict between the vocational expert's testimony related to pace and stress levels and the DOT.**

The Court finds that the ALJ fulfilled the requirements of SSR 00-4p. First, the ALJ asked whether the vocational expert's testimony conflicted with the DOT and received the expert's confirmation no conflict existed. Even though an ALJ is not absolved of their duty

---

[7] The "SCO" refers to the DOT's supplement entitled Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, which elaborates on exertional RFC classifications. *See* SSR 83-14, 1983 WL 31254, at *1 (Jan. 1, 1983).

to ensure that the vocational expert's testimony is consistent with the DOT just because the expert testifies that the two are consistent, *see Moore*, 769 F.3d at 990, at the very least, it is clear from the vocational expert's testimony here that the DOT could not conflict with areas on which it was silent—the DOT does not offer guidance on pace work or low stress work. Thus, to the extent that Plaintiff challenges the vocational expert's testimony about the pace and stress levels of work for the representative occupations, there can be no conflict between the expert's testimony and the DOT, and thus, no conflict that the ALJ failed to resolve.

**B.     There is no conflict between the Worker Functions ratings in the representative occupations of marker and mail sorter and an RFC limiting Plaintiff to "simple and routine tasks" and "simple and work related decisions."**

For the sake of thoroughness, the Court next considers whether there are any non-pace or stress-level related job characteristics specific to the jobs identified that would still conflict with the DOT. Plaintiff challenges whether a marker or mail sorter involves more than "simple and routine tasks" and "simple and work related decisions." (Tr. at 22.) A "marker"

> [m]arks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies.

DICOT 209.587-034, 1991 WL 671802. A "mail sorter"

> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters,

25

adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter.

DICOT 209.687-026, 1991 WL 671813.

These "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)). "The middle three digits of the DOT occupational code are the Worker Functions ratings of the tasks performed in the occupation" and relate to the degree of demand on a worker as to "data, people, and things." DICOT, *Parts of the Occupational Definition*, 1991 WL 645965. "As a general rule, Worker Functions involving more complex responsibility and judgment are assigned lower numbers in these three lists while functions which are less complicated have higher numbers." *Id.* "It is assumed that, if the job requires it, the worker can generally perform any higher numbered function listed in each of the three categories." *Id.* Thus, if the representative jobs identified only involve "simple and routine tasks" and "simple and work related decisions" according to the DOT, the Court would expect the three middle digits would have a higher number, signaling the functions are less complicated.

First the Court will consider the initial Worker Functions rating digit concerning data. A job can have a rating between one and six for the first digit related to data. *See* DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701. Reviewing a marker's first Worker Functions rating—five—a worker would need to do no

26

more than "copy" data, which involves "[t]ranscribing, entering, or posting data." DICOT, *Parts of the Occupational Definition*, 1991 WL 645965; DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701; DICOT 209.587-034, 1991 WL 671802. Reviewing a mail sorter's first middle digit—six—a worker would need to do no more than "compare" data, which involves "[j]udging the readily observable functional, structural, or compositional characteristics (whether similar to or divergent from obvious standards) of data, people, or things." DICOT, *Parts of the Occupational Definition*, 1991 WL 645965; DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701; DICOT 209.687-026, 1991 WL 671813. Both jobs have ratings at the higher end of the Worker Functions rating at five and six, respectively, and the Court finds that these ratings and their descriptions do not conflict with an RFC limiting Plaintiff to "simple and routine tasks" and "simple and work related decisions." *See, e.g.*, *Melsha v. Colvin*, No. 14-cv-3 (JSS), 2014 WL 5858561, at *6–7 (N.D. Iowa Nov. 12, 2014) (affirming an ALJ's decision finding a plaintiff limited to simple, routine tasks could perform the representative jobs of a marker and mail clerk); *Weckherlin v. Berryhill*, No. 4:16-cv-1487 (AGF), 2017 WL 3873167, at *1, 4 (E.D. Mo. Sept. 5, 2017) (affirming an ALJ's decision finding a plaintiff limited to simple, routine, repetitive work without a fast pace could perform representative jobs of mail room clerk and merchandise marker).

Next, the Court will consider the second two Worker Functions rating digits concerning people and things. The final two digits in both the marker and mail sorter jobs are the same—an eight in relation to people, and a seven in relation to things. DICOT 209.587-034, 1991 WL 671802; DICOT 209.687-026, 1991 WL 671813. Both numbers

represent the highest (and therefore least complicated) category of job in relation to people (with ratings from one through eight) and things (with ratings from one through seven). *See* DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701. As to people, both jobs require a worker to do no more than take "instructions" from and "help" people, which involves "[a]ttending to the work assignments instructions or orders of supervisors" with no immediate response required or expectation of learning. DICOT, *Parts of the Occupational Definition*, 1991 WL 645965; DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701; DICOT 209.587-034, 1991 WL 671802; DICOT 209.687-026, 1991 WL 671813. As to things, both jobs require a worker to do no more than "handle" things, which involves "[u]sing body members, handtools, and/or special devices to work, move, or carry objects or materials" and "[i]nvolves little or no latitude for judgment with regard to attainment of standards or in selecting appropriate tool, object, or materials." DICOT, *Parts of the Occupational Definition*, 1991 WL 645965; DICOT, *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701; DICOT 209.587-034, 1991 WL 671802; DICOT 209.687-026, 1991 WL 671813. The Court again finds that these ratings and their descriptions do not conflict with an RFC limiting Plaintiff to "simple and routine tasks" and "simple and work related decisions." *See, e.g.*, *Melsha*, 2014 WL 5858561, at *6–7. *Weckherlin*, 2017 WL 3873167, at *1, 4.

**C.      There is no conflict between the general educational development rating on reasoning in the representative occupations of marker and mail sorter and an RFC limiting Plaintiff to "simple and routine tasks" and "simple and work related decisions."**

Along with these functional ratings in the middle three digits of each job, the DOT also assigns jobs a rating on a scale of one through six for general educational development in three areas: reasoning, math, and language development. DICOT, *Appendix C – Components of the Definition Trailer*, 1991 WL 6887702. The lower the rating, the less complicated reasoning is involved in a job. The reasoning component is relevant here to consider whether the occupations of marker and mail sorter in the DOT involve more than "simple and routine tasks" and "simple and work related decisions." (Tr. at 22.)

Here, the job of a marker is rated a "Level 2" for reasoning, which requires a worker to do no more than "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." DICOT, *Appendix C – Components of the Definition Trailer*, 1991 WL 6887702; DICOT 209.587-034, 1991 WL 671802. The role of a mail sorter is rated a "Level 3" for reasoning, which requires a worker to do no more than "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT, *Appendix C – Components of the Definition Trailer*, 1991 WL 6887702; DICOT 209.687-026, 1991 WL 671813.

Considering the characteristics of jobs like marker or mail sorter in relation reasoning, the Court finds no conflict between the DOT and the vocational expert's

testimony that a person limited to "simple and routine tasks" and "simple and work related decisions" could perform these roles. *Accord Murphy v. Berryhill*, No. 18-cv-61 (LRR), 2019 WL 1140235, at \*16 (N.D. Iowa Mar. 12, 2019) ("[T]he Eighth Circuit has held that a claimant who could follow 'simple, concrete instructions' could do a job requiring level 3 reasoning and a claimant who was limited to unskilled work could do jobs requiring level 3 reasoning.") (citing *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007); *Renfrow v. Astrue*, 496 F.3d 918, (8th Cir. 2007)); *see also, Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) ("We previously have found no direct conflict between carrying out simple job instructions for simple, routine and repetitive work activity, and a vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate.") (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)) (cleaned up); *Nicolas J. v. Kijakazi*, No. 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at \*25 (D. Minn. Jan. 20, 2022) (affirming an ALJ's decision finding a plaintiff limited to simple, routine tasks at a nonproduction pace could perform work requiring Level 3 reasoning), *R. & R. adopted sub nom. Nicholas C. J. v. Kijakazi*, 2022 WL 807605 (D. Minn. Mar. 17, 2022).

In sum, because the hypotheticals presented to the vocational expert were based on substantial evidence in the record, and because there is no conflict between the expert's testimony and the DOT, the Court finds that the ALJ properly relied on the vocational expert's testimony to conclude Plaintiff was not disabled. *Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007).

## V.     THE ALJ PROPERLY RELIED ON THE VOCATIONAL EXPERT'S IDENTIFICATION OF ENOUGH JOBS NATIONALLY TO INDICATE REGIONAL JOBS IN SIGNIFICANT NUMBERS ALSO EXIST.

Plaintiff's final argument is that the ALJ erred in concluding that the record proves there are a significant number of jobs that she could still perform despite her limitations. While the ALJ relied on the vocational expert's identification of 143,200 total representative jobs available in the national economy, Plaintiff contends the record lacks required evidence on these jobs. Specifically, the record contains no evidence on how many of those jobs are in the state or region where Plaintiff lives, or are in several other regions in the nation, as required by regulation under 20 C.F.R. § 404.1566. Because the burden is on the Commissioner at step five to show a claimant can perform other work and is not disabled, Plaintiff contends that this failure to identify the regional locations of the representative jobs merits reversal of the Commissioner's decision.

The Commissioner responds that the jobs of marker and mail sorter identified by the vocational expert are not the type of jobs that are geographically specific, "such as a shrimp-boat worker or tobacco farmer." (Doc. 14 at 21.) He also argues that the prehearing notice provided by the ALJ put the vocational expert on notice that they would be asked if Plaintiff could perform work in the national economy existing in "significant numbers either in the region where the claimant lives or in several other regions of the country." (*Id.* at 22 (citing Tr. at 198).) The Commissioner also contends that Plaintiff's counsel could have asked more probing questions about job locations at the hearing had he believed the expert's testimony was deficient, but did not do so.

To begin with, there is no dispute that the vocational expert's identification of 143,200 total representative jobs is a sufficient number. The dispute lies, instead, in whether the record must show *where* in the nation such jobs exist. At step five in the sequential evaluation, to demonstrate that a claimant is not disabled, the Commissioner must prove that "substantial gainful work . . . exists in the national economy, regardless of whether such work exists in the immediate area in which [a plaintiff] lives, or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work." 42 U.S.C. § 423(d)(2)(A). The regulations define "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*; *see also* 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.").

The Eighth Circuit has created no rubric by which courts measure whether the identified representative jobs in a case meet the regulatory requirements. *See Karen E. v. Kijakazi*, No. 21-cv-3015 (CJW/MAR), 2022 WL 17548642, at *7 (N.D. Iowa Sept. 15, 2022) ("The Eighth Circuit has never held that an ALJ must specifically identify whether jobs exist in the claimant's region or several regions as opposed to simply identifying jobs in the entire national economy."). Instead, this question is left "to the trial judge's common sense" based on the particular facts of the case. *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997). One court in this District recently summarized the different ways that courts in this Circuit exercise that common sense, noting that the District of South Dakota's courts

32

require that an ALJ rely on evidence that representative jobs exist in a claimant's region or in several regions, while the District of Missouri's courts accept that jobs that exist nationally exist in several regions of the country absent evidence that they are jobs peculiar to particular regions. *See Shari B. v. Kijakazi*, No. 22-cv-1539 (DJF), 2023 WL 6130679, at *8 (D. Minn. Sept. 19, 2023) (collecting cases).

*Shari B.* is instructive. There, the court determined that while a sufficient number of national jobs likely indicates job availability in several regions, too few jobs nationally could require evidence of a regional breakdown. *Id.* at 9. Applying this rule, the *Shari B.* court found 18,000 jobs in the national economy provided insufficient evidence of an adequate number of jobs at regional levels, and the court remanded the case with directions for the Commissioner to supplement the record as to the locations of the representative jobs identified. *Id.*

There is a significant difference between the 18,000 representative jobs in *Shari B.* and the 143,200 here. It is true that the vocational expert provided no regional breakdown on which the ALJ could rely. (*See* Tr. at 40–41, 77–78.) Even so, considering the number of jobs, the broad definitions of a marker or mail sorter discussed above, and the fact that there appears to be nothing peculiar to any region about either of these occupations, the Court finds that these national numbers are sufficient to show that representative jobs exist without requiring evidence of regional breakdowns. Therefore, the Court finds that the ALJ met his burden at step five to show that a sufficient number of representative jobs are available to Plaintiff and that, consequently, she is not disabled.

**ORDER**

Based on the above, as well as the files, records, and proceedings in this case, **IT**

**IS ORDERED** that:

1.      Plaintiff's Motion (Doc. 11) is **DENIED**; and

2.      Defendant's Motion (Doc. 14) is **GRANTED.**


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  September 19, 2024         *s/Douglas L. Micko*
                                    DOUGLAS L. MICKO
                                    United States Magistrate Judge